IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELCHEVA HARRIS, B89301, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-64-RJD |
| ) | |
| JOSHUA A. PARKER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Joshua A. Parker's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 36). For the reasons set forth below, the motion is **GRANTED**.

**Background**

Plaintiff Delcheva Harris, an inmate in the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Centralia Correctional Center. Plaintiff's initial complaint, which was filed on January 14, 2022, and his First Amended Complaint, filed on July 28, 2022, did not survive preliminary review pursuant to 28 U.S.C. § 1915A. (Docs. 1 and 19). Following a preliminary review of the Second Amended Complaint, which was filed on May 25, 2023, Plaintiff was allowed to proceed on the following claim: Count 1 for First Amendment retaliation claim against Parker. (Doc. 24).[1]

---

[1] In his Second Amended Complaint, Plaintiff asserted four claims (Counts 1-4) against several defendants. After a preliminary review of the Second Amended Complaint, Counts 2, 3, and 4 were dismissed and all named defendants other than Parker were terminated. (Doc. 24).

**The Second Amended Complaint (Doc. 23)**

Plaintiff made the following allegations in his Second Amended Complaint. On June 12, 2021, Defendant Parker (Correctional Officer-Internal Affairs) asked Plaintiff for information concerning the ongoing drug epidemic at Centralia. Plaintiff responded that he had no idea what Parker was talking about. Parker, using racially insensitive language, threatened to have other correctional officers harass Plaintiff. On June 23, 2021, Parker filed a false disciplinary report on Plaintiff for having two new tattoos of a cross and pharaoh that had not been documented when Plaintiff arrived at Centralia. (Doc. 23 at 14). The pharaoh was a cover-up for a "Mary Rose" tattoo that had been documented earlier but was no longer visible. Plaintiff denied that he ever had a "Mary Rose" tattoo and pled not guilty. (Doc. 23 at 11). Defendants Toennies and Westbrook were on the hearing committee and found Plaintiff guilty of the infraction on July 1, 2021. Plaintiff was punished with a two-month demotion to C-grade.

On July 21, 2021, Plaintiff filed a grievance against Parker for bringing the false disciplinary charge on the tattoos. (Doc. 23 at 6, 12-13). In August 2021, Parker told Plaintiff he should not have written that grievance and said he would have all the Centralia correctional officers target Plaintiff. Plaintiff allegedly wrote another grievance against Parker for the threats of retaliation on August 25, 2021. On November 17, 2021, Plaintiff received a disciplinary report for failing to report to the pill line, even though his medication had been discontinued in September 2021. Another employee told Plaintiff that Parker "put a hit out" on Plaintiff so he would be punished. Plaintiff got another disciplinary report on December 16, 2021, for failure to report to the pill line at a time when he was restricted to his cell due to a hunger strike. Again, an unidentified correctional officer told Plaintiff that Parker had a hit on him. In Count 1, Plaintiff asserts a First Amendment claim for retaliation on the basis that following Plaintiff's grievances

against Parker, Plaintiff was charged with baseless disciplinary infractions consistent with Parker's threats to have other officers target Plaintiff.  (Doc. 24 at 4).

**Defendant Parker's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 36).**

Parker filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 36).  Parker makes the following factual allegations.  On June 21, 2021, Defendant Parker conducted an interview with Plaintiff in the intel unit.  (*Id.* at 2; Doc. 36-1 at 30).  On June 23, 2021, Parker issued Plaintiff an Offender Disciplinary Report citing a Health, Smoking, or Safety Violation for his new tattoos.  (*Id.*).  On July 1, 2021, the Adjustment Committee found Plaintiff guilty of having two new tattoos on his right forearm.  Plaintiff was demoted to C grade for two months (Doc. 36 at 2; Doc. 36-1 at 31-32).  Plaintiff filed grievance #21-7-18 on or about July 21, 2021, regarding his June 23, 2021, disciplinary report.  (Doc. 36 at 2; Doc. 36-1 at 35).  Grievance #21-7-18 was reviewed by Plaintiff's grievance officer for the second level review on October 19, 2021.  (Doc. 36 at 2; Doc. 36-1 at 35).  The grievance officer's recommendation was approved by the Chief Administrative Officer on October 25, 2021.  (*Id.*).  Plaintiff appealed grievance #21-7-18 to the Administrative Review Board ("ARB") on or about November 5, 2021, and it was denied by the ARB on December 1, 2021.  (Doc. 36 at 2; Doc. 36-1 at 29).  On November 17, 2021, Plaintiff received a disciplinary report for failure to report to the pill line.  (Doc. 36 at 2; Doc. 36-1 at 28).  Plaintiff was found guilty of his November 17, 2021, disciplinary report following an adjustment committee hearing on November 25, 2021.  (Doc. 36 at 2-3; Doc. 36-1 at 29).  Plaintiff filed grievance #21-11-205 about his November 17, 2021, disciplinary report on or about November 19, 2021.  (Doc. 36 at 3; Doc. 36-1 at 22-23).  Grievance #21-11-205 was reviewed by Plaintiff's grievance officer for the second level review on December 20, 2021.  (Doc.

36 at 3; Doc. 36-1 at 20-21). The grievance officer's conclusion was approved by the Chief Administrative Officer on December 27, 2021. (*Id.*). Plaintiff appealed grievance #21-11-205 to the ARB on January 10, 2022, and it was denied by the ARB on January 19, 2022. (Doc. 36 at 3; Doc. 36-1 at 19). Plaintiff was not issued a disciplinary ticket on December 16, 2021, for failure to report to the pill line. (Doc. 36 at 3; Doc. 36-2).

Plaintiff did not file a response to Parker's motion for summary judgment even though he was properly served and provided with notice of its filing. (*See* Doc. 38). After a careful review of the arguments and evidence set forth, the Court determined that an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is not necessary.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital,*

*Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust."  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal, 745 F. 3d 232,* 236 (7th Cir. 2014).

Under Local Rule 56.1, "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." SDIL-LR 56.1 (g).

*Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).  "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."  *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).  "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved.  20 ILL. ADMIN. CODE § 504.810(a).  If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative

Officer — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Further, to satisfy the requirement of exhaustion of administrative remedies, the grievance must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. ILCS § 504.810(c). However, an offender who does not know the name of each person who is involved in the complaint may simply describe the individual with as much detail as possible. *Id.* The Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to

address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir.2011); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010). Thus, not naming the defendants in a grievance is "'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (quoting *Maddox*, 655 F.3d at 722). So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842–43 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006).

## Discussion

Plaintiff's Grievance History lists nine grievances, with only seven of them being filed near or after the time Plaintiff received his first disciplinary report at issue on June 21, 2021.

1. *Grievance #21-7-18, dated July 21, 2021*

Grievance #21-7-18, dated July 21, 2021, grieves the issuance of a disciplinary report by Parker on June 21, 2021, regarding Plaintiff having two new tattoos. (Doc. 36-1 at 35-36). The grievance was reviewed by his grievance officer and the chief administrative officer and was denied by the ARB on December 1, 2021. (Doc. 36-1 at 29-34). Plaintiff denied that he had new tattoos and claimed that the intake officers had failed to properly list the tattoos he already had. Plaintiff further raised racism concerns due to the language used in the disciplinary report. He stated that "[i]t is also clear the Office J. Parker is demonstrating semitic racisms against me calling me Black and putting it on this said disciplinary report boldly!, knowing that title deludes to slavery like he is trying to extend his powers as an officer by taking away my Nationality and birth rights." (Doc. 36-1 at 36). Plaintiff also complained about Parker misidentifying Plaintiff in the report,

calling him "Christmas." (*Id.*). Plaintiff further filed a rebuttal letter with the ARB, in which he claimed that Parker demonstrated racism against him and did not follow proper procedures in issuing the June 21, 2021, disciplinary report. (Doc. 36-1 at 39). Both the grievance and the rebuttal letter are devoid of any claims of retaliation. In any case, as Parker correctly noted in his motion, Grievance #21-7-18 cannot be used to exhaust Plaintiff's claim for retaliation because Plaintiff claimed Parker's retaliatory actions were initiated only after Plaintiff filed that same grievance against Parker. Accordingly, the Court concludes that Grievance #21-7-18, dated July 21, 2021, did not exhaust Plaintiff's administrative remedies regarding his retaliation claim against Parker.

2. *Grievance #21-8-24, dated August 2, 2021*

In Grievance 21-8-24, dated August 2, 2021, Plaintiff grieved the June 23, 2021, IDR Hearing and Final Summary on the June 21, 2021, disciplinary ticket for his new tattoos. (Doc. 36-1 at 40, 42-44). He claimed that the Final Summary incorrectly listed him as a Black individual and diminished his heritage. (*Id.*). He further complained his hearing was unfair. (*Id.*). He stated that the Adjustment Committee supported "officer Parker's racial bias" against Plaintiff by listing his race as "Black." (*Id.*). The grievance was reviewed by his grievance officer and the chief administrative officer and was denied by the ARB on December 1, 2021, along with Grievance #21-7-18, dated July 21, 2021. (*Id.* at 29). In his appeal to the ARB, Plaintiff included a rebuttal letter in which Plaintiff complained about being subjected to racial discrimination and being stripped of his nationality due to him being designated as "Black" in the Final Summary issued by the Adjustment Committee. (*Id.* at 44). Neither the original Grievance #21-8-24 nor the rebuttal letter included any allegations of retaliation by Defendant Parker due to Plaintiff filing a grievance

against him.  Accordingly, the Court concludes that 21-8-24, dated August 2, 2021, did not exhaust Plaintiff's claims against Parker for retaliation following the filing of Grievance #21-7-18.

3. *Grievance #21-11-205, dated November 19, 2021.*

Plaintiff filed Grievance #21-11-205, dated November 19, 2021, regarding his November 17, 2021, disciplinary report for his failure to report to the pill line. (Doc. 36-1 at 22-23).  Plaintiff was found guilty of this disciplinary report following an adjustment committee hearing on November 25, 2021.  (*Id.* at 28).  In his grievance, Plaintiff stated that he did not show up on the pill line because his medication had been discontinued. (Doc. 36-1 at 22-23).   He explained that the disciplinary ticket was issued due to a misunderstanding between the "healthcare unit and the telepsyc," because the "telepsyc took [him] off meds Sept. 29!" but his name was not removed from the pill list.  (*Id.*).  Plaintiff stated that he was "targeted and racially profiled" and that the officers who issued the disciplinary report were "stripping away his Nationality and Birthright" by calling him "Black."  (*Id.*).  He further complained the writer dehumanized him by calling him an offender.  (*Id.*).  The grievance references three correctional officers:  C. Fogerson, the writer of the disciplinary report; B. Armstrong, the serving employee; and one unidentified officer who reviewed the disciplinary report.  (*Id.*).  Plaintiff requested that racism stop. (*Id.*).  The Grievance Officer and the Chief Administrative Officer reviewed the grievance, and the ARB denied it on January 19, 2022, as unsubstantiated.  (*Id.* at 19).  As the Grievance officer noted in his report, Plaintiff, in essence, complained about the language used on the disciplinary report, which Plaintiff found offensive and discriminatory.  (*Id.*).  Defendant Parker was not named in the grievance. Further, there was no indication that Plaintiff was targeted by any officer in retaliation for filing grievances against Parker.  Rather, Plaintiff provided as a basis for the issuance of the ticket the misunderstanding between the "healthcare unit and the telepsyc" and racial bias.  Accordingly, the

Page **9** of **14**

Court finds that Grievance #21-11-205 dated 11/22/2021 did not exhaust Plaintiff's administrative remedies as to his retaliation claim asserted in Count I of the Second Amended Complaint.

4. *Grievance #21-12-147, dated December 17, 2021*

In this grievance, Plaintiff complained regarding a disciplinary report he received on December 16, 2021. (Doc. 36-1 at 13). He claimed that he was "entrapped" by an unidentified correctional officer and was "denied to walk to pill line and the option for the meds to come to [him]." (*Id.*). He stated that he was given a disciplinary report for his failure to report to the pill line. (*Id.*). He claimed that C/O Fogerson retaliated against him in the disciplinary report by calling him "offender" and listing his race as "Black." (*Id.*). He stated, "This is a continued retaliation against me," but did not provide any additional details as to the reasons for the retaliation. (*Id.*). The grievance does not identify Parker. It further does not indicate that the ticket was written in retaliation for prior grievances Plaintiff filed against Parker or any other correctional officer. The grievance was reviewed by his grievance officer and appealed to the ARB, where it was denied on January 19, 2022, because there was no disciplinary ticket on file on the date identified by the Plaintiff in his grievance. (*Id.* at 11). Plaintiff was instructed to refile the grievance and provide the correct date of the alleged disciplinary ticket. (*Id.*). Because the grievance did not identify Parker or indicate that he was issued the ticket in retaliation for prior grievances Plaintiff filed against Parker, the Court finds that #21-12-147, dated December 17, 2021, did not exhaust Plaintiff's administrative remedies as to Count I of the Second Amended Complaint.

5. *Grievance #21-12-153 dated December 17, 2021*

In Grievance #21-12-153, dated December 17, 2021, Plaintiff grieved a 25-cent disbursement from his trust fund account, which he claims he did not authorize. (Doc. 36-1 at 17). He alleged that his signature was forged. (*Id.*). He stated that "C. Davis approved" the

disbursement, and that was "an attack and retaliation." (*Id.*). He stated that "the above said employees C. Davis and the other name can be proving on receipt/authorization for payment and other employees are operating this institution outside of the law making it an unhealthy environment for reform." (*Id.*). He requested that the identified employees in the grievance be penalized and "for the attacks and for retaliation to stop." (*Id.*). Grievance #21-12-153, dated December 17, 2021, did not exhaust Plaintiff's administrative remedies against Parker for two reasons. First, the grievance did not name or otherwise identify Parker as being involved in the alleged forgery and unauthorized disbursement. It further did not indicate that Parker had any participation in the alleged attacks and retaliation. The general reference to "other employees" operating outside the law is insufficient to put the institution on notice of Plaintiff's specific complaint against Parker. Second, the grievance was fully exhausted on June 2, 2022, nearly six months after Plaintiff initiated this complaint.

   6. *Grievance #22-8-62, dated August 7, 2022*

In Grievance #22-8-62, dated August 7, 2022, Plaintiff grieved an incident that occurred on August 6, 2022. (Doc. 36-1 at 7-10). Plaintiff complained that C/O Hess and C/O Carnes, non-parties, "locked down the whole house" (S4). When Plaintiff asked C/O Hess why the house was getting locked down, C/O Hess responded "we are a union you get on one of are bad side you are on all of are bad side, I'm just doing my part B.U.D.! BLACK. UGLY. DOG." (*Id.* at 10). Plaintiff further stated that since he filed his first grievance raising discrimination claims, he has continuously received racial attacks in retaliation. (*Id.*). Plaintiff noted in the grievance that C/O Hess acknowledged that fact and laughed. (*Id.*). The grievance was reviewed by the Grievance Officer and the Chief Administrative Officer and was denied by the ARB on December 27, 2022. (*Id.* at 7). This grievance appears to be potentially relevant to Plaintiff's allegations against Parker

for retaliation following the grievances Plaintiff filed against him. However, the grievance was filed on August 7, 2022, more than seven months after Plaintiff initiated this action on January 14, 2022, and weeks after Plaintiff filed his First Amended Complaint on July 28, 2022, specifically asserting retaliation allegations against Parker. (Docs. 1 and 19). The grievance was not fully exhausted until the ARB's denial on December 27, 2022. (Doc. 36-1 at 7). While the grievance was filed and exhausted prior to Plaintiff's filing of his Second Amended Complaint on May 25, 2023, PLRA's exhaustion requirement is not satisfied. Under PLRA, exhaustion of administrative remedies is a "'precondition to suit' and requires dismissal if the prisoner failed to satisfy that condition." *See Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (citation omitted). A court has no "discretion to resolve the claim on the merits, *even if the prisoner exhausts intra-prison remedies before judgment*." *Id.* (citation and internal quotation marks omitted) (emphasis added). Here, Plaintiff asserted a retaliation claim against Parker for the first time when he brought his First Amended Complaint on July 28, 2022. Accordingly, to comply with PLRA's exhaustion requirements, Plaintiff should have fully exhausted his retaliation grievance prior to that date. Because Grievance #22-8-62 was not filed until August 7, 2022, it did not satisfy Plaintiff's duty to exhaust his administrative remedies prior to initiating this action.

7. *Grievance #22-8-201, dated August 18, 2022.*

In Grievance #22-8-201, dated August 18, 2022, Plaintiff grieved an incident that occurred while on a crisis watch in restricted housing on August 14, 2022. (Doc. 36-1 at 4-6). Plaintiff complained that Correctional Officer Pyne, a non-party, along with another unidentified correctional officer provided him with a regular food tray while being on a suicide watch, then urged him to commit suicide with the provided spoon. (*Id.*). When Plaintiff denied doing so, C/O Pyne and other unidentified correctional officers allegedly assaulted Plaintiff. (*Id.*). The grievance

was reviewed by the Grievance Officer and the Chief Administrative Officer and was denied by the ARB on December 27, 2022. (*Id.* at 3). This grievance was filed and exhausted several months after Plaintiff had filed this current action. In any case, Plaintiff does not identify Parker as one of the correctional officers who assaulted him. Moreover, the grievance does not relate to Plaintiff's claims for being issued disciplinary tickets in retaliation for filing grievances against Parker. Therefore, the Court concludes Grievance #22-8-201, dated August 18, 2022, did not exhaust Plaintiff's claims for retaliation against Parker.

Accordingly, none of the grievances listed in Plaintiff's Grievance History exhausted Plaintiff's administrative remedies as to his retaliation claim against Parker. The Court further notes that Plaintiff did not file a response to the motion for summary judgment to dispute Parker's factual allegations or assert that the grievance process was somehow unavailable to him. In any case, Parker accurately points out in his motion that Plaintiff's Second Amended Complaint and Grievance history demonstrates that the grievance process was available to Plaintiff in that Plaintiff properly submitted and exhausted several grievances.

## Conclusion

For the reasons stated above, Defendant Parker's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 36) is **GRANTED**. This matter is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 5, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**